WALKER and DOUGLAS, JJ., dissenting in part.
The plaintiff, administrator of B. J. Wilson, filed (401) his petition against the defendants, heirs at law, etc., for the purpose of procuring license to sell certain real estate, of which he alleged his intestate was the owner at the time of his death, to make assets, etc. The petition includes *Page 292 
two tracts of land: one "known as the homestead of B. J. Wilson," etc.; the other "known as a part of the John S. Brown land, lying on the east side of the Greenville and Washington road," etc. The petition contained the necessary averments to entitle the plaintiff to relief.
The defendant, G. C. Edwards, filed an answer admitting the material averments, and further alleged that he and his wife had recovered in the Superior Court of Greene County, on 1 October, 1889, a judgment against the plaintiff's intestate, which was duly docketed in Pitt County. That an execution thereon had issued from the Superior Court of Greene County, and the homestead of the defendant therein duly allotted. That said judgment remained unsatisfied and constituted a lien upon that portion of the land described in the complaint known as the "homestead." To this answer the plaintiff filed a reply admitting the recovery of the judgment.
The second paragraph of the reply is as follows: "That it is denied on information and belief that execution on said judgment was properly and lawfully issued from the Superior Court of Greene County, and the homestead legally and regularly allotted under the same, and it is specifically averred that said execution was irregular and void." The plaintiff pleaded the bar of the statute.
The defendants, B. W. Brown and others, by their guardian, filed an answer denying that the plaintiff's intestate was, at the time of his death, the owner of the tract of land on the east side of the road, etc. They further alleged that they were the owners in fee of said land.
To this answer the plaintiff filed a reply, denying the (402) affirmative allegations and pleading the twenty and seven-years statutes of limitation in bar of their claim, etc. The plaintiff further alleged that at a sale of said land made by the sheriff, F. W. Brown, the father of the defendants, purchased the same upon a parol trust to hold the title to the use of plaintiff's intestate. That he remained in possession, paying taxes and receiving the rents of said land, for more than twenty years and until his death. The cause was, upon issues made by the pleadings, transferred to the civil issue docket for trial.
In regard to the defendant Edwards the court submitted the issue upon the statute of limitations. The defendant introduced the clerk of the Superior Court of Pitt, who produced the record showing transcript of judgment from Greene, docketed in Pitt, 5 October, 1889. The docket showed the entry, "Fi. fa. issued October, 1889. Homestead appraised and set off and return made 14 October, 1889." He next introduced the record of the *Page 293 
return of the sheriff showing allotment of homestead and personal property exemption, under execution on judgment of G. C. Edwards and wife v. B. J.Wilson, dated 14 October, 1889. (It did not appear from said return from what county the execution was issued). The defendants introduced a deed from the sheriff of Pitt County to F. W. Brown, in which a sale under two executions issued from the Superior Court of Greene County, upon judgments in favor of G. C. Edwards and wife v. B. F. Wilson, Julia C. Dixon,Executrix, v. B. F. Wilson is recited. The levy is recited as made on 14 October, 1889. This was all the evidence in regard to the controversy upon the lien of the Edwards judgment. His Honor instructed the jury that if they believed the evidence they should answer the issue "No." Plaintiff excepted.
We concur with the opinion of his Honor. There was (403) uncontradicted evidence amply sufficient to show that the execution issued on the Edwards judgment from the Superior Court of Greene. It is very doubtful whether the answer sufficiently denied the averment. We think that upon a proper construction of the paragraph in the answer it may well be said that it was not denied. From any point of view, his Honor correctly instructed the jury. The court submitted the following issue to the jury: "Did Frank W. Brown take the legal title to the tract of land described in the sheriff's deed, introduced for the use and benefit of B. J. Wilson?"
The plaintiff tendered, in addition, an issue directed to the inquiry whether plaintiff's intestate had been in the open and adverse possession of the land in controversy for more than twenty years; also in regard to adverse possession under color of title for more than seven years. His Honor declined to submit either of these issues, and the plaintiff excepted. His Honor's ruling was correct. The possession of plaintiff's intestate could not possibly have been adverse to Dr. Brown for twenty years, for the manifest reason that the sheriff's deed was executed 7 March, 1890, before which time Dr. Brown had no right of action or right of entry. The plaintiff's intestate, prior to that time, had a perfect title to the land.
In regard to the second issue tendered, there was no evidence that the plaintiff's intestate had possession of the land after 17 March, 1890, the date of the sheriff's deed, under color of title. We have no difficulty in holding, upon the authorities, that, in the absence of any explanation, the possession of plaintiff's intestate after the right of action accrued to Dr. Brown was adverse to him, and if continued for twenty years would have ripened into perfect title. Scarborough v. Scarborough, *Page 294 122 N.C. 234. The deed under which plaintiff's intestate (404) became the owner of the land could not constitute color of title after the execution of the sheriff's deed.
In Johnson v. Farlow, 35 N.C. 84, Pearson, J., says: "McCracken, after his deed to the lessor, had no color of title, and the adverse possession which he held was naked. It is absurd to suppose that the deed under which he had originally acquired the land could serve his purpose as color of title, after he had passed all of his estate, interest and claim under it to the lessor. Color of title is something which purports to give title, but he had nothing of the kind. The deed to him was functus officio, except as one of the mesne conveyances of the lessor. If McCracken had taken a deed from a third person, that would have been color of title, and seven years' adverse possession under it would, in the language of the cases, `have ripened it into a perfect title,' thus originating that which did not exist at the date of his deed, for the averment of this new title would not be inconsistent with the admission which he was bound to make, that his deed passed the title to the lessor."
Brown's legal title was but a continuance of the title of the plaintiff's intestate, the defendant in the execution. After the sale and execution of the sheriff's deed, the character of the possession retained by plaintiff's intestate was open to explanation. Ruffin v. Overby,88 N.C. 369; Bryan v. Spivey, 109 N.C. 57; Boomer v. Gibbs, 114 N.C. 76.
His Honor properly refused to submit either of the plaintiff's issues tendered. His Honor instructed the jury in regard to the issue tendered: "That if the plaintiff had satisfied them by strong, clear and convincing evidence that Dr. F. W. Brown took the legal title to the tract of land described in the sheriff's deed introduced, for the use and benefit of B. J. Wilson, they should answer the third issue `Yes,' and that unless the plaintiff had satisfied them by (405) strong, clear and convincing evidence that Dr. F. W. Brown took the legal title to said tract of land for the use and benefit of B. J. Wilson, they should answer the third issue `No.'" The instruction was in accordance with the decisions of this Court. Smith, C. J., in McNairv. Pope, 100 N.C. 404, says: "But to engraft such a trust upon a legal estate, the proof of its formation should be strong and convincing." InSummerlin v. Cowles, 101 N.C. 473, it is said: "To attach a trust to a legal estate by parol, or to convert a deed absolute in form into a security merely, and perhaps in other cases invoking the exercise of equitable judicial functions for relief, more proof is required than that which preponderates and governs in the trial of ordinary questions of fact." In Cobb v. *Page 295 Edwards, 117 N.C. 244, Avery, J., says: "Where the judge is not at liberty to say that there is no evidence of the kind required by the rule of law prescribed in such cases, it is his duty to tell the jury that the law requires clear, strong and convincing proof to show the agreement, as well as the subsequent acts or admissions, and that it is their province to say whether that offered does so convince them of its truth."
This and other cases in our Reports sustain his Honor's charge to the jury. While the testimony in regard to the inadequate price paid for the land, the continued possession of the judgment debtor, payment of taxes, the reduction of the mortgage indebtedness upon the land, the relation between himself and the purchaser might well have justified the jury in finding that Dr. Brown held the title upon some trust or understanding between himself and the judgment debtor, these questions are peculiarly within their province, and, in the absence of any error in the instructions by which they were guided, we are not permitted to question their verdict. Upon careful examination of the entire record, we find
No error.